Our fourth case on the docket today is case number 110505 Gary Palm versus 2800 Lake Shore Drive Condominium Association et al. Agenda number eight. Counsel for the appellant. Good morning, Justices. My name is Mark Roth. I represent the appellants. There's two issues involved in this appeal, and the first issue relates to the validity and enforceability of a home rule ordinance that was enacted by the City of Chicago. The first issue specifically is whether the records provision of the Chicago Condominium Ordinance is valid when the ordinance conflicts with Section 19 of the Illinois Condominium Property Act and renders those conflicting portions of the act unenforceable in the City of Chicago. There's three conflicts between the Condominium Act on the one hand and the Chicago Condominium Ordinance on the other. As an initial matter, Mr. Roth, sorry to interrupt you, and I know those are the generally framed issues, but I just want to ask you a procedural question. There's some suggestion I want to know about timeliness of this appeal, that there was a ruling and a motion to reconsider, and that was ruled upon. Then there was a second motion to reconsider, but I'm not clear on exactly if I got the pronoun. I want to make sure we don't have a jurisdictional appeal problem here. Because if we do, there's no case. Right. And I don't believe that there is any issue with respect to jurisdiction. Could you clarify that pronology? Well, from my recollection, this case is a golden oldie. It's about 11 years old right now, but back in about 2001, the Judge Sidney Jones was sitting on a bench in the Chancellery Division, and he dismissed one count of the plaintiff's amended complaint that related to this issue of whether, of the validity of the Chicago Condominium Ordinance. Mr. Palm filed a motion for reconsideration of that issue, which was denied. Then the City of Chicago filed a petition to intervene into that action. Around that period of time, Judge Jones retired, and Judge Sophia Hall then assumed his position. And Judge Hall reconsidered the entire issue as a whole and found that, in fact, the Condominium Ordinance was valid, even in light of the existing state statutes. And was that based on the first motion to reconsider? It's a little jumbled in my mind, but the Court basically reconsidered everything from the original motion to dismiss on backwards and reconsidered Judge Jones's ruling that there was some state preemption, essentially, of the Condominium Ordinance. May I ask specifically, December 11, 2000, the trial court granted a motion to dismiss, and I believe, and this is my question, I believe it was to dismiss the entire complaint. With leave to appeal. With leave to amend. I'm sorry, with leave to amend. With leave to amend. Yes. Yes, it was dismissed without prejudice. In December 11, 2000, the order will say with leave to amend. Correct. And then there was a, instead of filing an amended complaint, plaintiff filed a motion to reconsider, correct? I believe that is correct. And April 3, 2001, the trial court denied plaintiff's motion to reconsider, correct? That is correct. And then on May 8, more than 30 days, plaintiff filed a second motion to reconsider. Is that your understanding? That's my understanding. I believe that that's the chronology. I must be honest with you. I'm not exactly sure about the dates you're asking, but that sounds right. My concern is didn't the trial court lose jurisdiction after 30 days had run from the final order dismissing the entire I believe that there might have been an intervening complaint filed in the interim. I'm just not sure of that. I'd have to take a look at the chronology of events. Yes. We'll have to look at the record carefully to see procedurally what occurred here. In your statement of procedural history and other sides, both of their statements of chronology, I think I've tried to set out exactly what has been described to us. No one has suggested that there's another complaint that was filed. There's nothing to really explain to us what happened between April 3, 2001, when there was a denial of the motion to reconsider the entire complaint, and May 8, 2001, when there was a second motion to reconsider. And at this point, you're not sure either. Quite frankly, I'm just not sure. I'm sorry. I can't answer the question. To take a look at, there certainly are conflicts between the act on the one hand and then the ordinance on the other hand. And that is that under the Condominium Property Act, a unit owner has to state a proper purpose in order to obtain financial books and records. And under the Chicago Condominium Ordinance, there is no purpose required to obtain those books and records. So a unit owner can ask for the records without any purpose or could ask for the records for an improper purpose. The other conflict is that a condominium association has to produce 10 years of books and records under the Condominium Act, the state statute. And under the Condominium Ordinance of the City of Chicago, it's an unlimited period of time. For purposes of preemption, though, does it matter whether the municipal ordinance is more restrictive or less restrictive than the state statute? Yes, I think it does. That is that one way, what the cases have found is that in the cases where the validity of the home rule ordinance has been upheld, the home rule ordinance has been a subset of the statute. So in those cases, it was more restrictive. And we've cited to those cases that City of Chicago versus Roman, City of Evanston versus Crete. So you have a statute and then you have a home rule ordinance that's a subset of that statute. And in that way, the ordinance preserves the integrity and the enforceability of the statute. And all of those cases have found that. And that's a test that this court has used in those cases and in other situations, too, in deciding whether conflicts exist between the Illinois Supreme Court rules and the Code of Civil Procedure. For example, in those cases where this court decided those issues, it found that where a Code of Civil Procedure was a mere subset of an Illinois Supreme Court rule, it was enforceable. What we have here, though, is we have a condominium ordinance, a home rule ordinance, that actually eviscerates and renders unenforceable significant portions of Section 19 of the Condominium Ordinance. Section 19 of the Condominium Property Act within the confines of the city. And the problem with that is that this court has always said that there's three tests to determine whether a home rule ordinance is valid in light of a state statute. And that is you look at, does the home rule ordinance relate to a local governmental issue, number one? Number two, is there express preemption in the state statute? And number three, is there a proper relationship between the state statute and the local ordinance? Now, one and two, points one and two about the issue relating to local governance and whether there's express preemption are not at issue in this litigation at all. We're not raising that to you. What we're saying is you need to focus on the relationship between the statute and the ordinance. And the reason that is, is because the power of the home rule authorities is derived from the Illinois Constitution, specifically Article 7, Section 6I. And that provision says that home rule units may exercise and perform concurrently with the state any power or function of a home rule unit unless the General Assembly by law does not specifically limit the concurrent exercise. Now, what concurrent means, if we take a look at cases from the United States Supreme Court and from our own Illinois Appellate Court and other courts, is concurrent means in conjunction with. And that's also found in this court's case. And there's a case of Shillerstrom v. Naperville Homes where it discusses that third prong of the analysis of whether you have a valid home rule ordinance. And it finds that the exact quote was that absent express authority from the General Assembly, a local home rule ordinance is free to enact ordinances that complement the state statute. And in Shillerstrom, this court found that the ordinance was in fact valid because it didn't contradict and eviscerate a state statute like we have here, but rather it was complementary. So that's a very distinguishing factor that we don't see in this particular case. The Appellate Court opinion in our view is wrong because it really only analyzed the first two factors of the test for enforceability of a home rule ordinance. It never looked at the proper relationship between the statute and the ordinance. But what the city and Mr. Palm want to say is that if it relates to local governmental affairs and there's no express preemption, then a local home rule ordinance, home rule municipality can do whatever they want to do. It doesn't matter. But that's actually not the test. The test set out by this court, and it's been used time and time again in cases that we've cited, is that you have to look at that third prong. If they were right, and that is if in fact once there's a finding that there's some issue that relates to local governance and there's no express preemption, then the city can do whatever it wants to do. Then you wouldn't have the third prong of the analysis, which is what we're focusing on in this particular case and where we believe that we're right and that the ordinance in fact is invalid as exceeding the home rule's authority. We think that although the appellate court in this case got it wrong, that the second and fourth district courts, appellate courts got it right. In the second district case of Oak Brook Terrace and the fourth district case of Seven Kegs, in those cases the courts found that if the ordinance irreconcilably conflicts with a state statute and renders the statute invalid, then the ordinance is itself invalid as exceeding the power of the home rule authority. So what we're asking here is that this court reverse the appellate court on that issue and find that in fact the records provision of the condominium ordinance is invalid. Oak Brook Terrace, however, focused on the burden to the judiciary, right? Yes, it did. Actually, that was an issue. Is that a distinguishing feature? I mean, we don't have that in this case, certainly, but is that a distinguishing feature? Well, the power, I mean, traditionally the power of the judiciary is reserved to the state. I think that's pretty clear. And that is one thing that the Oak Brook Terrace discussed. Seven Kegs didn't have that issue, but that was an issue. But I don't think that that diminishes the fact that what we see in Oak Brook Terrace and Seven Kegs is that if there's a conflict that renders a statute invalid, then the ordinance must fall. This third prong, you're talking about the restrictive, more restrictive, less restrictive? Yes, I'm talking about a relationship between the statute and ordinance, correct? Right. How do you address your opponent's point that says that's a problematic test because whether or not an ordinance is more or less restrictive is more or less in the eyes of the beholder? Well, you have to take a look. First of all, the one thing that you have to, the overriding concern is that the ordinance must maintain the integrity of the statute. So if it doesn't do that, whether you look at it from a condominium association's perspective or a unit owner's perspective, then the ordinance should fall. If you take a look at it specifically in this particular case and you take a look at what the Illinois legislature was trying to do is with respect to financial books and records, Section 19 of the Condominium Act says that we're going to put restrictions on unit owners obtaining those financial books and records. And the restriction would be that they have to state a proper purpose. That's a restriction. What the city is saying is, well, it's less restrictive or it's more restrictive on condominium associations. But that from the Illinois legislature's position, in fact, it is improper because it doesn't put the restriction where it should be, and that is on the unit owner. If it was more restrictive on the unit owner obtaining those documents, then it would be more restrictive and maintain the integrity of Section 19 of the Act. I understand what they're saying, but I think in this case it's misapplied. And also on maybe a more global sense is that in order to be enforceable, for the ordinance to be enforceable, it still has to maintain the integrity of the state statute. And that's the cases that we've seen. Now, there's another issue that's on appeal here, and that relates to the amount of attorney's fees that were awarded to the plaintiff on an interim fee basis. Let me ask a procedural question about that. I'm sorry, I'm busy about the procedure. The order that you're referring to, I believe, is the August 26, 2008 order, correct, in which the trial court ordered plaintiff interim attorney's fees. Why are they interim? This case was filed in 2000. As we've indicated, there was summary judgment ultimately in 03. Five years later, there are interim attorney's fees. What attorney fees are we talking about? The plaintiff was awarded fees based on his prevailing under the Chicago County Minimum Ordinance. I believe that order contained 304A language as well. Why is it interim? What is left to be done? What is left in this case? Is there any case left? I don't understand. Why is there 304A language when it appears at first blush that this case was over in August of 08? Well, I only wish it was over in August of 08. In fact, it's still going to a certain extent. We had a trial two years later, and we've just been. On what issue? What was left? There was issues that were raised later on about alleged breach of fiduciary duties by the association that are unrelated to the issues that we have here. So the case continued on, and we tried the case in December of 09, I believe. So there were new counts to the complaint years later? Yes, there were. There was a second amount of complaint filed and then a subsequent third amount of complaint filed. The second issue relating to fees is the plaintiff was awarded fees at a rate that's higher than the fees that the plaintiff contracted with his attorney to pay that he did pay, that he never claimed were unreasonable, and that the attorney never. And the fees awarded unreasonable because isn't there something in the record to say that he gave a discounted rate? No. My understanding is that the record is going to show that, in fact, he paid his attorney $200 per hour. That is the rate that he paid his attorney. But is there no evidence that he said it was discounted? Not that I can recall, but yes. The problem with this is that, well, first of all, if you find he was awarded fees under the city of Chicago condominium ordinance because he was a successful plaintiff under the records ordinance. So if the records ordinance falls, then there may not be any need to get to the fee issue because the fees would fall as well because they were based only on the record ordinance. We contend in this case that this court should review the issue of whether the fees were proper de novo. And the reason that is is because any analysis of a fee issue that's based on a statute or ordinance has to first start with what the ordinance says and an interpretation of that ordinance. You have some fee statutes, for example, that say you can get a reasonable fee. So in that case, you're entitled to a market rate fee. Other fee statutes say that you can get actual fees incurred in a litigation, for example. And in this case, our fee position petition states that a plaintiff is entitled to recover his reasonable fees. That's what the Chicago condominium ordinance says. So you have to take a look at what is the term his means. The fees has to be his fees. They have to belong to him and they have to be reasonable. And the Illinois courts universally find that the interpretation of an ordinance is something that's reviewed de novo. And the U.S. Supreme Court, in fact, has found that when you're taking a look at an award of fees under a statute or here, in our case, an ordinance, the first question that you have to look at is what is the wording of the statute say? Because that's going to tell you on what basis you can or can't award fees. Now, in this case, the plaintiff was awarded more than his fees. He paid $200 an hour. He was awarded fees at $300 an hour. So he was not awarded his fees. What the plaintiff says is that, well, despite the fact that I paid $200 an hour and I'm going to get an award of $300 an hour, somehow that's not a windfall for me. But that just doesn't really make sense. If the plaintiff is going to profit on a transaction, which he clearly is, if he's paying his attorney $200, he's getting $300, he's profiting on a transaction, that's either a windfall to the plaintiff or it's an imposition of damages against the defendants. And in this case, the plaintiff never was awarded any damages whatsoever. But because of the fee award, because he's being awarded one-third more than he's paying out in fees, it's essentially an imposition of damages, punitive damages, really, against my client. So under any circumstance, we believe whether it's a de novo review or an abuse of discretion review, we don't believe that that fee award can stand. Thank you. Thank you, counsel. Counsel, before you start, before the clock starts running, we understand you have an agreement to split your time. We do, yes. Twelve minutes and eight? Yeah. Now, we don't keep track of that time. And I can tell you many times I've seen counsel come up and say we have an agreement, and the other counsel is chomping at the bit at the other table. So if his time runs up and you want to get up here, let us know. Mr. Palm has promised that he will make clear to me when it's time for me to sit down, Your Honor. And I will keep an eye on the clock as well to try and make that easy. Good morning. May it please the Court. My name is Chris Norborg. I'm an assistant corporation counsel for the City of Chicago. I'm here today on behalf of the city. I will limit my remarks to the home rule issue. Mr. Palm will get up after me, and he will discuss both issues to the extent he feels necessary. I will leave the timeliness question that Justice Tice and Chief Justice Kilbride raised to Mr. Palm. But briefly, our understanding of the record is that when the motion to reconsider was denied, the initial motion to reconsider, the state of the record was that a motion to dismiss had been denied without prejudice to be amended. So it's not as though the first motion to reconsider had the same sort of jurisdictional significance it would in a case where it was a final order that was subject to the motion to reconsider. Your Honors, 2800 Lakeshore concedes, as counsel made clear again today, and they certainly made clear in their reply brief in this case, that the city's ordinance pertains to the local government and affairs. And they also concede that there is no statute that the General Assembly has passed that explicitly and expressly and specifically removes home rule power in this area. Now, in the typical home rule case, which is exactly what this is, that's the end of the story. Those two issues are dispositive. Only in the most extraordinary circumstances, as we describe in our brief, does this Court look beyond that and make a determination that there is a next step to take, and the next step being determining the proper relationship between state law and local law. And the situation that that happens is when the Illinois Constitution has spoken specifically on the issue. In the environmental context, as recognized in John Sexton in some earlier cases, the Illinois Constitution in a separate sister provision to the home rule provision indicated that the state, that the General Assembly has control over environmental policy and is empowered to pass legislation to enforce that policy. And the Court held reasonably that in that context, where the Illinois Constitution has specifically said this is the state's province, that if a local home rule unit is going to legislate, they may do so, but they must do so consistently with state law. In John Sexton itself, they found that the local regulation was consistent and, therefore, was upheld. Another case, the Lignuel case, where the Illinois Constitution specifically said that the question whether or not branch banking should be allowed was for the state to determine. The Court said the city of Chicago, therefore, cannot allow branch banking, despite the fact that it may, could conceivably fall within home rule power. The Illinois Condominium Property Act states that unless specifically provided otherwise, the provisions of, quote, this act are applicable to all condominiums in the state, end of quote. Does that indicate the intent of the legislature that any home rule municipal ordinances cannot conflict with this provision? This Court has never recognized language such as that as sufficient to constitute, express, and specific preemption language. The typical boilerplate language, which, as we explained in a brief, the 90th General Assembly, the General Assembly that passed this law, utilized itself, is much more detailed and specific, actually says home rule power is hereby preempted, I'm paraphrasing. And so were that language to be sufficient, then that would probably change the outcome in a number of cases, because that sort of general language is included in a number of other statutes. Now, of course, what that language certainly means is that it applies throughout the state. It doesn't reach the question of whether or not a home rule unit could apply different standards. And the reason why, returning to my point about why you only reach the third question about harmonizing state and local law in situations where there is absent preemption, absent explicit statement by the state legislature, where there is explicit statement within the state constitution, is because otherwise you would have some sort of amorphous consideration by the courts, where they would be determining whether or not a state law and a home rule law should work together in ways that does not sufficiently respect the true meaning of home rule, and that is the shifting of sovereign power to the local home rule unit. Does it make a difference, then, whether municipal ordinance is more restrictive or less restrictive? Your Honor, as your Honor brought that up earlier with counsel, and I think as we explained in our brief, this really is a matter of eye of the beholder, because although 2800 Lakeshore looks to the state law as regulating this relevant provision, Section 19, as regulating unit owners somehow, we submit that it is much more clearly read to regulate condominiums, and therefore more naturally condominium associations. It lets condominium associations understand whether and to what extent they may refuse to disclose records upon request and sets the contours for that. And certainly it's our position that our ordinance is aimed at regulating condominium associations and not unit owners, and therefore with respect to whether or not it's more restrictive or less restrictive, we argue that it is more restrictive on condominium owners and more permissive and more liberal with regard to allowing unit owners to have access to what, to be fair, are their own records. They're members of these associations, and if they want to see them, the city has reached the decision and reached the decision actually before the state legislature added this language, changing the standard under state law, the city reached the decision that it should be a liberal, very permissive, open policy of allowing access and timely access to these sorts of records. So to return back to my theme about when this court would look past the pertains to local government affairs question and the express preemption by the General Assembly question, this is simply not a case where the court needs to look beyond that. This court does not need to determine whether or not the city's ordinance can be harmonized with state law, because the state, the General Assembly in passing the Condominium Act, was not acting in an area that the Illinois Constitution set aside for the state to be paramount in. Unlike the environmental cases where there was clear constitutional language saying the environmental realm is for the state to control, and the legal case with the branch banking question, it's a very limited and extraordinary step for this court to look beyond it. The one interesting and very unique case that seems to entertain this would be Shillerstrom, the recent Shillerstrom case. But what happened there was gap filling. In Shillerstrom and also in Budka, the case that the court found, I think in Shillerstrom they said there was one case that was really helpful in deciding the case, Budka. In both of those cases, the local government opted not to exercise its full home rule power in an area, or declined to exercise its home rule power. In Shillerstrom, the local Naperville did not enact a remedy provision, and the state did enact a remedy provision. So it made perfect sense to say there is a gap here, and we are going to apply the state law remedy provision here and leave it with no remedy. To do that in this case would not be filling a gap, because there's no gap in Section 19 of the city's ordinance. It completely, broadly granted, but completely regulates the area that it means to regulate. And so to impose a standard from state law on the city as a home rule unit in this case, would be tantamount to imposing state standards and procedures on a city and forcing a city or a home rule unit to comply with state standards and procedures. And notably, that is exactly what the Constitutional Convention rejected when considering what home rule meant. There was a lot of debate about including a provision, a sub-provision in the home rule provision, that would say that the General Assembly, by general law, can set standards and procedures that the home rule units would have to comply with. But that was defeated. It was determined that that would be too much of a, that would take away too much home rule power and not allow for the site-specific, city-specific, town-specific treatment of problems that fell within the government and affairs of the local home rule units. So as a result... So your view, excuse me, on Shillerstrom is that it basically favors home rule authority even? Are you arguing that it would allow some conflict as long as it's not expressly prohibited and doesn't impact a vital state policy? Is that what your view is on Shillerstrom? Yes, I think so. Or is that more or less than how you view it? That's essentially how I view it. The way we, I think maybe the way we would say we view Shillerstrom is a very specific and narrow and interesting scenario where the municipality, which, you know, it's worth noting that in that instance it was a remedy that lied against the municipality itself. So the municipality passed ostensibly home rule regulation that was identical to the state regulation but left out the remedy that would have lied against it itself. And it's only, and then sort of in a post hoc manner said, well, we left that out on purpose because we don't want it to apply against us. Now had Naperville in that case replaced the remedy with something different, some sort of wrist slap type of remedy that was but something, or had they explicitly said in the legislation and not in the defense of the legislation, that they had intended that it was the intent, active intent to have no remedy, then perhaps it would have been a different case. But as it stands, it was not a particularly difficult case. It was a unanimous decision saying you have a gap in home rules exercise of its power. It could have, as in Budka, perhaps done something more with its home rule power but hasn't done it. And therefore we look to see if there's any other applicable law. Yes, there is. It's the state law. Therefore, it applies here. So our understanding of Shillestrom is it's a very narrow and specific situation that is really not comparable to what happened here because to import the standard, the proper purpose standard, which is really the linchpin of the dispute here or the most substantive aspect of the dispute, into the city's ordinance would substantially change the ordinance. The city has defined this violation in the way that it intended to define the violation. And that is, excuse me, it's defined the responsibility in the way that it intended to define the responsibility, and that is comprehensively. If there is any request by a unit owner, then you need to provide the materials within three days, period. Any request. It is a comprehensive regulation and it doesn't require any sorts of, it doesn't accept any types of requests because they're deemed not to have a proper purpose. So to add the proper purpose would change the city's ordinance and would impose a state standard, which as I've explained is just not something that should be done in this context. And I need to stress that this is exactly what the Constitutional Convention did not want to occur in the relationship between home rule and state law. For state law to be able to draw lines and set standards that the municipality would need to hew to. Now to address just a couple of the issues that came up while opposing counsel was up here, I don't want to take too much time because I would like Mr. Palm to get up. With regards to the idea of what concurrent means, which is a recurring theme in opposing counsel's argument and the 2800 Lakeshore's argument, we submit that essentially this is a cherry picking of this definition and saying that this is what concurrent has to mean. Concurrent has to mean some sort of cooperation. Now the idea of concurrent, the initial definition in virtually every dictionary, the OED including the dictionary in the attorney's room here, has nothing to do with working in conjunction together toward the same end. It just has to do with working on the same, applying to the same area at the same time, working in parallel. So under that primary definition, clearly this ordinance is concurrent with the state statute. And this brings us to the whole point of Home Rule, which is where the sovereign power lies. Once it is determined that something pertains to local government and affairs, and once it is determined that there is no express, explicit preemption by the legislature, or in the rare case a reservation of power to the state by the Constitution, then the sovereign power lies with the Home Rule unit. And so the fact that there are parallel laws, all that means is that in the Home Rule unit that chooses to enact an ordinance, in this specific case in the city of Chicago with regard to the access to condominium documents, that is the sovereign law. So there is really no problem and that is essentially the heart of Home Rule and that's how it is supposed to work. So I will go ahead and sit down now and let Mr. Palm stand up and present his argument. Thank you very much. The city would like to ask for affirmance. Good morning, your honors. My name is Gary Palm and I'm representing myself here today. First, let me deal, rather than go to my text, deal with some of the questions that were raised. The first is about the interim fee petition. It was filed on September 15, 2003. This was filed at the time that Judge Hall entered summary judgment, finding that the city ordinance had been violated by the 2800 Condominium Association. And the fees were only up to that time, to the entry of summary judgment. After the entry of summary judgment, the defendants agreed, entered into an agreed order to produce all the documents requested. And so production went on and the interim petition sat fully briefed for two years and then in 2005, we filed a motion to renew the interim fee petition. And having reviewed the documents and had them copied, we also realized, I realized that, along with counsel, that there were many problems at the 2800 that were shown, financial problems, conflicts of interest, mismanagement at 2800. So Judge Hall granted us leave to file an amended complaint. And that complaint has been amended, I think, once more, maybe twice more. And that complaint went to summary judgment and Judge Hall entered, I think, five declaratory judgments and maybe, or ten declaratory judgments and five injunctions on summary judgment and then left open the questions for which there was factual dispute. And then the trial was held and after that she issued another set, just issued another set of declaratory judgments and injunctions. And the Condominium Association, in response to that, has just refunded $3.1 million to the unit owners for surpluses they improperly retained. Now, I know that the Condo Association may well appeal, but the fact is without these documents we would have never gotten there and convinced a trial judge in Chancery that we had a case. And the second thing is that I don't believe there's any problem with the motions for reconsideration. And I see I'm already down to my three minutes. I was going to say, Mr. Palmier, in a minute you're going to wish you went first. But the question of the $200, $300, right, was the reasonableness of the fees put in with the contract of the $200 showing that it's fair and reasonable and then also indicating that the market would have been $300? I mean, where are we at on that? Right. The agreement I had with Mrs. Steinberg that is in the record, was that in the interim I would pay $200 per hour. And if we lost, I was out the $200. It wasn't a traditional contingent fee agreement. And if we won, she would get whatever the court awarded and at the market rate. Is that in the record? Yes. That's at C-11. Oh, here it is. I got it here. C-1151 through C-1156. And that's the verified interim petition for attorney's fees and costs filed in 03, September 15th. Would we be entitled to the additional $100 per hour? No, absolutely not.  Mrs. Steinberg. That's in the agreement. And there's never been anything that has said that in any briefing or anything. And I know that Judge Hall didn't intend to give me that. And he argues I'm wealthy. I'm not wealthy. And that has no business in this case, whatever my financial condition. Poor people or rich are entitled to attorney's fees at a reasonable market rate when a prevailing plaintiff statute that creates private attorney generals is violated. And without this statute, the results in this case would have never happened, I can assure you. Mr. Palm, you don't have to leave. I'd like you to finish your sentence you were in about you were explaining why you thought we didn't have a timeliness problem. You didn't quite finish that sentence. Well, I would suggest that maybe I file a supplemental statement or we might be able to get a joint statement setting out. What happened was they didn't raise the preemption issue in their motions to dismiss, nor when they produced the original document. They gave us one two-page document originally and didn't say this is all that's preemptive. They said they were in compliance with the city ordinance. Then they didn't raise it in their motion to dismiss. Judge Jones raised it and asked for supplemental briefs. I don't know whether that was the first. The problem I have with the complaints is it was amended. He gave me leave to amend it. I don't know whether the supplemental briefing, and I can't really tell from the record, just trying to do it at table, is whether the supplemental briefing that he ordered about preemption was before the second amended complaint was filed or after. But then that's when I went to the city and said, hey, you know, this is getting rid of your ordinance on preemption. And they decided to intervene. And then Judge Jones left the bench and we got transferred to Judge Hall, who was, I think, newly appointed to the chancellery at that point. Thank you, Mr. Paul. Thank you. Thank you. Mr. Roth? I just have a few points. The city claims that you really never get into the third prong of the three-prong analysis to determine validity of the Home Rule ordinance unless you have an area such as banking or environmental where everyone kind of agrees that that's solely the province of the state. And that's just not supported by the case law. Schillersfram was a case in which the court delved into that third prong of the analysis. That was an eminent domain case. The case this court decided in the Scadran v. City of Des Plaines case was a case involving road signs on the side of a highway, in which the case thoroughly analyzed the facts there to determine whether there was a conflict between the statute on the one hand and the ordinance on the other hand. And so they absolutely delved into the third element, which is whether there's a proper relationship between the statute and the ordinance. And we believe that, you know, that's mandated by the Constitution, which says that these entities have to act concurrently with one another. It doesn't say. The General Assembly, you know, obviously is presumed to know the existing case law when they draft certain language. And from the U.S. Supreme Court cases on down, when they're discussing two legislative bodies acting concurrently, the holdings are that they act in conjunction with the other body. And, in fact, this court has said on several occasions that in order to act concurrently, the Home Rule ordinance has to complement the state statute. That was cited specifically in Shillerstrom, and Shillerstrom cited two other Illinois Supreme Court cases that specifically found that. So you always have to look to the third element. The Illinois Constitution does not say that the Home Rule municipality can preempt state law as long as there's a local issue and as long as there's no express preemption. That's not what the Constitution says. And the case law that interprets that says that they must be complementary to one another. With respect to the attorney's fees issue, the problem with this case is that, first of all, there's no evidence that the attorney's fees are going to Ms. Steinberg, no matter what. The order in the case says the plaintiff's entitled to X amount of attorney's fees, a lump sum of attorney's fees. I don't remember. It's $90,000 approximately of fees. The transaction with the plaintiff and his attorney is done. He's paid his lawyer the $200 per hour. He's going to get, if we lose, we write him a check for $93,000 for whatever, with interest. That doesn't mean that that money is going to Ms. Steinberg. The distinguishing factor here between this case and some of the other cases are the cases that the plaintiff cites are all contingency fee cases in which there was no contract between a lawyer and his client as far as what fee would be paid. So what the court did in those cases is the court looked at, okay, this lawyer was not charging on an hourly basis, but what would his fee have been had he been charging on an hourly basis? What's the market rate for fees? But in this case, we have a market rate. We have the rate that he's being charged. It's $200 per hour. And there's one decision directly on point from the first district. That's the first National Bank versus Barclay case. And that case specifically held that. Contract reference, the idea that if they prevailed, that it would be at the market rate. They've never produced a contract. He's just saying that there's never there's no written agreement that's ever been produced in this case, that, that, that there would be some reduced rate. And then at some point, if they win, they get a higher rate. There's no written contract on that agreement. And I would note that Mr. Palm is obviously he's a lawyer. He's a law professor at the University of Chicago. And under the model code of professional responsibility, when a lawyer enters into an agreement with another person, and in this case with Mr. Palm, the fee has to be reasonable. So what he's done is he's entered into an agreement with Ms. Steinberg saying that I'm going to pay you $200 an hour. Now, there's no written agreement on that. Sometime later he says, well, yeah, but our agreement was I pay her $200 now. And if we win, then I give her some higher rate. So there's nothing in the record at all as to any written agreement other than what he's saying. But the problem is that no matter what, he's he's getting fees at a rate that's higher, one third higher than the amount he's paying to his lawyer. And that's the problem. And that's the reason it's a windfall. If it's if it's a windfall to him. And unfortunately, it's an imposition of damages as to my client when there was no finding at all of any damages. We never paid any damages throughout the entire case, not from day one and not till three weeks ago when a final order from the trial court finally came down in this case. But yet, because of the way that he's structured this fee issue, the plaintiff is going to collect money at our expense. Are we reviewing whether the judge abused her discretion in awarding the three hundred dollars an hour? Yes. Well, you're reviewing. I think that there's there's a couple layers of review here. I think that the one layer of review is you have to you have to review the ordinance first to determine on what basis. I'm just I'm only talking about the fees. Well, the fee issue is is I think it's a it's a multilayered issue. It's a it's initially a state interpretation of the ordinance to determine what the ordinance says. Does the ordinance allow for a market rate for fees irregardless of whether what he pays? No, because what the ordinance says is that a successful plaintiff is entitled to his reasonable fees. It doesn't say a reasonable fee. It doesn't say market rate fees. It says his fees, his fees, Mr. Ponce fees are two hundred dollars per hour. And that issue is unquestionably decided de novo because it's it's the interpretation of an ordinance, which is always this court has found is always interpreted de novo. So that that's the appropriate standard as to interpreting that ordinance. Mr. Roth, Mr. Palm cited the record. I think he said common law record pages C 1151 to 1153. Are you familiar with what? I think he's saying that's where the fee agreement is. Well, that's his recitation. He filed a motion that says this is my fee agreement. There's no fee agreement. There was never produced any written fee agreement in this case. What he's saying is in my motion, I said that this is my fee agreement. And that's all. He gave an affidavit that a reasonable fee is three hundred dollars per hour. Having said that, there's never there's no evidence whatsoever that. And again, this this started. This is not in today's dollars to a certain extent. Two hundred dollars an hour is not in 2011. This was in 2001. But in any event, there's no evidence whatsoever that that lawyer ever charged any client. Anything other than two hundred hours per hour. There's nothing in the record whatsoever that shows that that lawyer ever charged any other client. Three hundred hours per hour. Nothing. Did you request a prove up hearing on it? I mean, how was this decided? Was there an evidentiary hearing? There was not a evidentiary hearing in which a witness's testimony was taken. What the procedure that the court came up with was it followed the northern district of Illinois local rule. I believe it's fifty four where the parties submit affidavits and you also submit your bill. So I had to submit my bills, for example, to show how much time I spent on it. And my rate, by the way, was less than they was less than the two hundred hours per hour. Disregarding completely disregarding that the court just blindly accepted Judge Gillis's affidavit at three hundred hours per hour. But when in fact, you know, again, she was only charging two hundred. And there's no evidence whatsoever that she's ever charged anybody three hundred hours per hour. So we're asking that you reverse the the appellate court on actually both issues. Thank you. Case number one one zero five zero five. Gary Palm versus twenty eight hundred Lakeshore Drive Condominium Association is taken under advisement as agenda number eight. Mr. Marshall, the Supreme Court stands in adjournment until Tuesday morning, May 17th, 2011, 9 a.m.